UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH WRIGHT,

                            Plaintiff,

                                                        DECISION AND ORDER

                                                        04-CV-6332L

            v.

EASTMAN KODAK COMPANY,


                            Defendant.
_____

GARY THOMPSON,

                            Plaintiff,

            v.                                          04-CV-6333L

EASTMAN KODAK COMPANY,


                            Defendant.
_____


        Plaintiffs, Kenneth Wright and Gary Thompson, commenced these actions against their

employer, Eastman Kodak Company ("Kodak"), alleging that Kodak has discriminated against them

on account of their race in violation of 42 U.S.C. §§ 1981 and 2000e-5, and the New York State

Human Rights Law, Exec. L. § 296.[1]  Kodak has moved for partial summary judgment dismissing all of plaintiffs' claims that arose prior to certain dates, pursuant to releases that plaintiffs previously signed as part of a settlement of their claims against Kodak.[2]

## BACKGROUND

In 1999, following a series of discussions with the National Association for the Advancement of Colored People ("NAACP"), Kodak established an "Alternative Dispute Resolution Peer Review Process" for certain discrimination claims.  Affidavit of Clara Michiko Ooyama (Dkt. #19) ¶ 6. Under this process, an employee complaining of discrimination can submit that complaint to the NAACP, which then passes it on to Kodak.

Kodak then assigns the claimant a "coach" (who is not a Kodak employee) to help the claimant prepare and submit the claim and supporting documentation to a panel of three or four Kodak employees ("ADR Panel").  Ooyama Aff. ¶ 9.  The ADR Panel eventually makes findings and a recommendation to the "Corporate Sponsors," who are Kodak officers whose duty it is to decide whether to offer the claimant a settlement on behalf of Kodak, and if so in what amount. Ooyama Aff. ¶ 13.  The claimant may meet with one of the Corporate Sponsors, and based on those discussions the Corporate Sponsors may decide to increase the offer.  Ooyama Aff. ¶ 17.  The

---

[1]Kodak is now Wright's former employer, Wright having been laid off in a reduction in force in May 2004.

[2]Since these cases involve common issues of law and fact, for purposes of the present motions I am consolidating these cases pursuant to Fed. R. Civ. P. 42(a).

claimant may decline the offer, but if he accepts, as part of the settlement he must sign a release in favor of Kodak.  Ooyama Aff. ¶ 14.

Both Wright and Thompson have served on the ADR Panel, and they have also submitted their own claims to the panel.  Plaintiffs, who are both African-American, alleged differential treatment in pay and position compared to white employees, disparate treatment with respect to various aspects of their jobs, and that they were subjected to a hostile work environment because of their race.

Through the ADR process, Wright and Thompson were eventually offered, and accepted, payments from Kodak of $21,388 and $10,000, respectively.  *Wright* Dkt. #19-4 at 28; *Thompson* Dkt. #19-4 at 34.  Wright also received a wage grade increase of $73 per week.  Dkt. #19-4 at 28.

In return for these payments, each plaintiff "agree[d] to release Kodak from, and waive all claims or causes of action relating to [his] employment ... ."  Each plaintiff also agreed not to sue Kodak "based upon facts which [he] raised or could have raised to support such claims," and that if plaintiff did bring such a lawsuit, he would "return all payments received pursuant to this agreement."  The settlement agreements provided, however, that Wright and Thompson did not waive any claims that arose after their hearings before the ADR Panel, which occurred on October 26 and December 3, 1999 respectively.  *Wright* Dkt. #19 at 28; *Thompson* Dkt. #19-4 at 34.

Plaintiffs commenced these actions in July 2004.  They allege various types of race discrimination, particularly in the areas of pay and promotion.  They also bring hostile-work-environment claims, and claims of unlawful retaliation.

**DISCUSSION**

In opposition to Kodak's motion, plaintiffs contend that the releases they signed are void and unenforceable because they were procured through fraud and duress.  Specifically, plaintiffs contend that at the time they signed the settlement agreements containing the releases, they were unaware of the magnitude of their damages.  They contend that the ADR Panel and the Corporate Sponsors assigned to their claims were privy to information that was not disclosed to plaintiffs, although it is not entirely clear what information they are referring to.  Plaintiffs seem to suggest that when the Equal Employment Opportunity Commission ("EEOC") issued probable cause findings in both their cases in February 2004, this made plaintiffs aware that there had been systemic discrimination against black employees at Kodak, but it is not clear how this information would have affected plaintiffs' decisions concerning whether to settle their own individual claims.

Plaintiffs also contend that when they signed the releases, they were under "intense pressure" to sign the releases because they were aware of several other ADR panelists who had been removed from the ADR Panel and returned to their prior positions at Kodak after complaining about the ADR process.  Plaintiffs assert that the fear of returning to their prior, racially hostile work environments "put an incredible amount of stress and pressure" on them to sign the releases.  *Wright* Dkt. #24 ¶ 24; *Thompson* Dkt. #24 ¶ 25.

In assessing these arguments, and determining the validity and enforceability of the releases, the Court looks for guidance not only to Second Circuit precedent but to New York law.  *See VKK Corp. v. National Football League*, 244 F.3d 114, 122 (2d Cir. 2001); *Consolidated Edison, Inc. v. Northeast Utilities*, 332 F.Supp.2d 639, 646 (S.D.N.Y. 2004).  Under New York law, a "release is

- 4 -

a type of contract governed by principles of contract law." *Consolidated Edison*, 332 F.Supp.2d at

122 (citing *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 514 (2d Cir. 2001);

*Zilinskas v. Westinghouse Elec. Corp.*, 248 A.D.2d 777, 778 (3d Dep't 1998)).

In addition, "it is well settled that stipulations of settlement are favored by the courts, and

are not to be lightly cast aside." *Brock v. Brock*, 256 A.D.2d 375, 376 (2d Dep't 1998) (citing

*Hallock v. State of New York*, 64 N.Y.2d 224, 230 (1984)).  The burden of proof is therefore on the

party seeking to avoid the release. *Hayes v. Lipinski*, 239 A.D.2d 835, 835 (3d Dep't 1997); *Mergler*

*v. Crystal Properties Associates, Ltd.*, 179 A.D.2d 177, 181 (1st Dep't 1992).

The Second Circuit directed courts to look to the "totality of circumstances" to determine

whether the release of Title VII claims is knowing and voluntary.  *Bormann v. AT & T*

*Communications, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989), *cert. denied*, 493 U.S. 924 (1989).  The

relevant factors include:  (1) the plaintiff's education and business experience; (2) the amount of

time the plaintiff had possession of or access to the release before signing it; (3) the plaintiff's role

in deciding the terms of the release; (4) the clarity of the release; (5) whether the plaintiff was

represented by or consulted an attorney; (6) whether the consideration given in exchange for the

employee's waiver exceeds benefits to which the employee was already entitled by contract or law;

(7) whether the employer encouraged the employee to consult an attorney; and (8) whether the

employee had a fair opportunity to do so.  *Id.*  These factors are not exhaustive, and all need not be

satisfied before a release is deemed enforceable.  *Id.*

Here, I find that plaintiffs have failed to demonstrate the existence of any genuine issues of

fact that could call the validity of the releases into question.  The language of the releases was quite

clear, and when the Corporate Sponsor assigned to their claims presented plaintiffs with the

settlement agreements and releases, he expressly "encourage[d each plaintiff] to seek counsel regarding [his] decision ...," giving them each about two weeks to do so. *Wright* Dkt. #19-4 at 5; *Thompson* Dkt. #19-14 at 10.

With respect to their education, Wright states that he did not have a high school diploma at the time he signed the release, and Thompson states that he received a bachelor of arts degree in February 2004, about four years after signing the release. Arguably, that relative lack of education might militate in favor of voiding the releases, at least in Wright's case, but the significance of this factor is considerably lessened here by both plaintiffs' familiarity with the ADR process by virtue of their having served on the ADR Panel. In addition, the record reveals that each plaintiff knowingly and intelligently negotiated with the Corporate Sponsor, with the result that Kodak decided to make Wright an offer (having previously declined to do so), and increased its offer to Thompson. *Wright* Dkt. #19-4 at 2-3, 5-6; *Thompson* Dkt. #19-4 at 10, 12.

Both plaintiffs also got substantial consideration for the releases. The only real problem here, apparently, is that plaintiffs now believe that they should have held out for more. That is not a legitimate basis to set aside an otherwise valid release. *See 1420 Concourse Corp. v. Cruz*, 175 A.D.2d 747, 750 (1st Dep't 1991) ("the mere fact that it subsequently appears that the stipulation/settlement was a bad bargain does not warrant vacatur"); *Hill v. Kelly*, 180 A.D.2d 935, 936 (3d Dep't 1992) ("Simply having second thoughts about the settlement will not suffice" to void the agreement). The law of other jurisdictions is also in accord with that view. *See*, *e.g.*, *Young v. F.D.I.C.*, 103 F.3d 1180, 1195 (4th Cir.) ("[H]aving second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement"), *cert. denied*, 522 U.S. 928 (1997); *Weinberg v. Interep Corp.*, Civ. No. 05-5458, 2006 WL 1096908, at *5 (D.N.J. Apr. 26,

2006) ("Plaintiff can not demonstrate to a reasonable factfinder that the [settlement] Agreement should be invalidated as a result of any duress or undue influence.  That he had second thoughts or regrets months later is immaterial"); *Sea-Land Service, Inc. v. Sellan*, 64 F.Supp.2d 1255, 1260 (S.D.Fla. 1999) ("second thoughts are not a reason for voiding an agreement that was proper and valid when the parties concluded it"), *aff'd*, 231 F.3d 848 (11th Cir. 2000); *Pereira v. Boa Viagem Fishing Corp.*, 11 F.Supp.2d 151, 153 (D.Mass. 1998) ("[Plaintiff] may now wish he had made a different choice, but second thoughts are not a reason for undoing an agreement that was proper and valid when the parties concluded it"); *Fitzwater v. Lambert and Barr, Inc.*, 539 F.Supp. 282, 291 (D.Ark. 1982) ("startingly clear hindsight will not render the acts of one laboring under erroneous foresight void ab initio"); *Young v. Robertshaw Controls Co.*, 430 F.Supp. 1265, 1269 (E.D.Pa. 1977) ("underestimation of damages is not in and of itself a ground for setting aside a release").

Furthermore, "[i]n order to avoid a release on the grounds of fraud, a party must allege every material element of fraud with specific and detailed evidence in the record sufficient to establish a prima facie case."  *Touloumis v. Chalem*, 156 A.D.2d 230, 232-233 (1st Dep't 1989).  "Under New York law, '[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'"  *Lerner v. Fleet Bank, N.A.*, ___ F.3d ___, 2006 WL 2260822, at *13 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003)).

Here, plaintiffs have not alleged that defendant made any false representations to them.  They simply contend that when Kodak made the settlement offers, the Corporate Sponsors were aware of systemic race discrimination at Kodak, and failed to divulge this information to plaintiffs.  I fail

to see how that constitutes fraud.  As in *Nicholas v. Nynex, Inc.*, 929 F.Supp. 727 (S.D.N.Y. 1996), in which the plaintiff argued that he would not have signed a release if the defendant employer had not concealed from him the existence of pervasive discriminatory practices that had denied plaintiff promotions throughout his career and that ultimately resulted in his termination,

> [p]laintiff[s] ha[ve] not identified a single instance in which defendant made a misrepresentation to [them] or actively concealed the existence of discrimination against [them].  ... Plaintiff[s'] wholly conclusory assertions of fraudulent concealment–which consist of nothing more than plaintiff[s'] contention that [they] did not know about the alleged discrimination so defendant must have concealed it from [them]–are not sufficient to create a question of fact on this issue.

*Id.* at 732.

There is also nothing to suggest that Kodak had a duty to divulge this information to plaintiffs, *see Harris v. Key Bank Nat. Ass'n*, 89 F.Supp.2d 408, 417 (W.D.N.Y. 2000) (discussing when duty to disclose arises), nor are there facts suggesting that a fiduciary relationship existed between plaintiffs and defendant.  *See King v. Fox*, No. 97Civ.4134, 2005 WL 741760, at *4 (S.D.N.Y. Mar. 31, 2005) ("there is no fiduciary relationship between an employer and employee in ordinary circumstances") (citing *Berke v. Hamby*, 279 A.D.2d 491, 492 (2d Dep't 2001)).  For that matter, even if Kodak had some duty to disclose information that was material to plaintiffs' claims, I am not even sure what particular relevance information about systemic discrimination at Kodak would have had to plaintiffs in deciding whether to settle *their* individual claims.  In addition, plaintiffs, having served on the ADR Panel themselves, must have had *some* awareness of the extent of alleged race discrimination at Kodak.

I am equally unpersuaded by plaintiffs' claims of duress.  First, it is highly questionable whether plaintiffs have alleged facts supporting a finding of duress to begin with.  "A release is rendered voidable for duress when a plaintiff can show that the release was procured by (1) threat(s)

'precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative.'" *Cheung v. New York Palace Hotel*, No. 03-CV-0091, 2005 WL 2387573, at *4 (E.D.N.Y. Sept. 28, 2005) (quoting *Nicholas v. NYNEX., Inc.*, 929 F.Supp. 727, 732 (S.D.N.Y. 1996)); *accord Fruchthandler v. Green*, 233 A.D.2d 214, 214 (1st Dep't 1996).

Here, the alleged "duress" stemmed from plaintiffs' fears that if they did not sign the releases, they would be removed from the ADR Panel and sent back to their former jobs within Kodak, where they had allegedly been subjected to a hostile work environment.  There is no evidence in the record that this would have occurred, however, other than plaintiffs' nonspecific assertion that some other ADR panelists had been returned to their former positions after they complained about their ADR settlements or the ADR process.  Plaintiffs' assertion that the work environment at their former jobs was racially hostile is equally conclusory.

"Moreover, if plaintiff had the option of turning down additional severance and pursuing a legal claim, he had a reasonable alternative to signing the Release." *Harless v. Research Inst. of America*, 1 F.Supp.2d 235, 242 (S.D.N.Y. 1998).  Every litigant or potential litigant who is considering whether to accept an offer of settlement has a choice to make:  whether to settle the claim for a known sum, or to pursue litigation, which may offer the potential for a greater recovery, but also carries the risk of *no* recovery at all.  That this choice is often difficult to make does not mean that it is made under duress. *See Nicholas*, 929 F.Supp. at 733 ("While this choice is unlikely to be an easy one for someone facing financial difficulties and the uncertainties of unemployment, there is no indication that plaintiff was unable to make the decision of his own free will or that his circumstances were so straitened that they permitted no other alternative but signing the release");

*EEOC v. American Express Publ'g Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y. 1988) ("the fact that a party faces a difficult choice–between additional benefits or pursuing his legal rights–does not alone indicate lack of free will");

More important to this case, though, the law in New York is clear that "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp.*, 244 F.3d at 122 (quoting *DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 633-34 (2d Cir. 1982), *cert. denied*, 461 U.S. 915 (1983)).

> If the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it. A party may ratify a contract or release entered into under duress by "intentionally accepting benefits under the contract," by "remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it," or by "acting upon it, performing under it, or affirmatively acknowledging it."

*Id.* at 122-23 (quoting *In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir. 1989)) (footnote omitted). *See also David v. American Tel. & Tel. Co.*, 160 A.D.2d 632, 632 (1st Dep't 1990) ("A contract allegedly executed under duress is voidable, not void, and a plaintiff must demonstrate his decision to challenge that contract rather than to ratify it by accepting its benefits, even where he faces the hard choice of eschewing those benefits in order to pursue his legal rights").

Plaintiffs in this case do not deny that they accepted and retained the monies that Kodak paid to them pursuant to the releases. There is no hint in the record that they have repudiated those releases or attempted to return the money (as the settlement agreements themselves provided they would in the event that plaintiffs sued Kodak). Plaintiffs cannot have it both ways: enjoying the substantial monetary benefits that Kodak agreed to give them as consideration for the releases, but then asking that they be excused from living up to their end of the bargain by honoring those releases.

- 10 -

**CONCLUSION**

Defendant's motions for partial summary judgment in *Wright v. Eastman Kodak Company*, 04-CV-6332 (Dkt. #19) and in *Thompson v. Eastman Kodak Company*, 04-CV-6333 (Dkt. #19) are granted.  All of Wright's claims arising out of his employment with defendant prior to October 26, 1999, and all of Thompson's claims arising out of his employment with defendant prior to December 3, 1999, are dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 22, 2006.